UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| COURTNEY SZUBINSKI, | CIV. NO. 22-00533 LEK-RT |
| Plaintiff, | |
| vs. | |
| SJM PREMIER MEDICAL GROUP LLC, SCOTT J. MISCOVICH LLC, SCOTT J. MISCOVICH, M.D.; | |
| Defendants. | |

**ORDER DENYING DEFENDANT'S RENEWED MOTION TO DISMISS
OR TRANSFER VENUE, AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

On September 26, 2024, Defendants SJM Premier Medical Group LLC ("SJM"), Scott J. Miscovich, M.D. LLC doing business as Premier Medical Group ("PMG" and collectively "Corporate Defendants"), and Scott J. Miscovich, M.D.'s ("Dr. Miscovich" and collectively "Defendants") filed a Renewed Motion to Dismiss or Transfer of Venue ("Motion to Dismiss"). [Dkt. no. 66.] On October 23, 2024, Plaintiff Courtney Szubinski ("Plaintiff") filed a related Motion for Sanctions. [Dkt. no. 69.] On November 27, 2024, Plaintiff filed her memorandum in opposition to the Motion to Dismiss, and Defendants filed their memorandum in opposition to the Motion for Sanctions. [Dkt. nos. 72, 73.] On December 6, 2024, Plaintiff filed her reply in support of the Motion for Sanctions, and Defendants filed their reply in support of the Motion to Dismiss. [Dkt. nos. 74, 75.] The Court

finds the motions suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii. The Motion to Dismiss is denied without prejudice to filing another motion to transfer venue at the appropriate time as detailed below, and the Motion for Sanctions is denied.

## BACKGROUND

On October 16, 2023, Defendants filed their first motion to dismiss or transfer the case on account of venue ("First Motion to Dismiss"). [Defendants' Motion to Dismiss Second Amended Civil Complaint for Equitable and Monetary Relief, Filed October 2, 2023 [ECF 39] or for Judgment on the Pleadings, filed 10/16/23 (dkt. no. 43).] On February 20, 2024, this Court issued an order transferring venue to the United States District Court for the District of Arizona ("2/20 Order"). [Dkt. no. 52.[1]] On March 5, 2024, Plaintiff filed a motion for reconsideration of the 2/20 Order. [Dkt. no. 55.] On May 2, 2024, the Court issued an order granting in part and denying in part the Motion for Reconsideration ("Reconsideration Order"). [Dkt. no. 61.[2]] Because Plaintiff presented new evidence pertinent to venue in her motion for reconsideration, the Court

---

[1] The 2/20 Order is also available at 2024 WL 691375.

[2] The Reconsideration Order is also available at 2024 WL 1971988.

allowed Plaintiff to engage in venue-related discovery and
directed Defendants to file a motion for transfer of venue once
the record pertinent to venue was more fully developed.
Reconsideration Order, 2024 WL 1971988, at *2-3.

      The factual background was detailed in the 2/20 Order,
and will only be repeated as pertinent to the Motion to Dismiss
and the Motion for Sanctions. In short, Plaintiff alleges
Dr. Miscovich owns and operates SJM and PMG and made the final
decisions related to employment. [Second Amended Civil Complaint
for Equitable and Monetary Relief ("Second Amended Complaint"),
filed 10/2/23 (dkt. no. 39), at ¶¶ 10-12.] Plaintiff is
domiciled in Arizona, Dr. Miscovich is domiciled in Hawai`i, SJM
is a Nevada limited liability company with its principal place
of business in Arizona, and PMG is a Hawai`i limited liability
company with its principal place of business in Hawai`i. Dr.
Miscovich is the managing member of both SJM and PMG. [Id. at
¶¶ 1-4.]

      Plaintiff alleges she was hired on April 7, 2021 as a
part-time Covid-19 vaccinator at various vaccination sites in
Arizona, and began working full-time in July 2021 at the Pima
County, Arizona facility ("Pima County Facility"). [Id. at
¶¶ 13, 17.] Defendants offered Plaintiff a clinical coordinator
role at the Pima County Facility on August 10, 2021. [Id. at
¶ 22.] Plaintiff alleges that, on June 21, 2022, Plaintiff

3

received a letter from Miscovich terminating her employment. The letter had "Premier Medical Group Hawaii" and "Premier Medical Group USA" on the heading, and listed an address in Kaneohe, Hawai`i. [Id. at ¶ 36.]

Plaintiff alleges the following claims: retaliation for reporting violations of federal law regarding medical training and credentialing in violation of Title 31 United States Code Section 3730(h) (the "False Claims Act") against Defendants ("Count I"); discrimination based on sex resulting in her termination in violation of Hawai`i Revised Statutes Section 378-2 against the Corporate Defendants ("Count II"); retaliation in violation of Hawai`i Revised Statutes Section 378-62 (the "Hawai`i Whistleblowers' Protection Act" or "HWPA") against Defendants ("Count III"); and discrimination based on sex resulting in her termination in violation of Title 42 United States Code Section 2000e *et. seq.* ("Title VII") against the Corporate Defendants ("Count IV"). [Id. at ¶¶ 40-65.]

In the Motion to Dismiss, Defendants argue venue in the District of Hawai`i is improper, and that this Court should transfer the case to the District of Arizona on improper venue grounds or at its discretion. [Motion to Dismiss, Mem. in Supp. at 1-2.] In the Motion for Sanctions, Plaintiff asks the Court to sanction Defendants pursuant to Federal Rule of Civil

Procedure 11(b)(3) and the Court's inherent power because,
Plaintiff argues, Defendants knowingly asserted false facts and
made misleading arguments in their filings related to the First
Motion to Dismiss and the Motion for Reconsideration. [Motion
for Sanctions, Mem. in Supp. at 9-24.]

## I.    <u>Venue-Related Depositions</u>

Plaintiff's venue-related discovery consisted of the
depositions of Miscovich, Krista Romero-Cardenas ("Romero-
Cardenas"), and Rene Mansanas ("Mansanas"). [Motion for
Sanctions, Exh. A (Transcript of Scott J. Miscovich, M.D.
6/17/24 deposition ("Miscovich Depo.")); <u>id.</u>, Exh. B (Transcript
of Rene Mansanas 6/20/24 deposition ("Mansanas Depo.")); <u>id.</u>,
Exh. C (Transcript of Krista Romero-Cardenas 6/19/24 deposition
("Romero-Cardenas Depo.")).

### A.    <u>Mansanas Deposition</u>

Mansanas is the Executive Vice President and Chief
Operating Officer of "Premier Medical Group
Hawaii/USA/International." [Motion to Dismiss, Declaration of
Rene Mansanas ("Mansanas Decl.") at ¶ 1.]

In her deposition, Mansanas testified she was not
involved in selecting the ultimate individuals who were
terminated. [Motion for Sanctions, Exh. B (Mansanas Depo.) at
26.]

Mansanas testified that, in May 2022, she visited different work sites in Arizona, and the reason for her work-related travel was to "see if anybody had questions or concerns." [Id. at 16.] Mansanas stated that she did not "form any impressions or conclusions based on what [she saw] . . . physically in Arizona" during her May 2022 visit. [Id. at 18.]

Mansanas testified that the first time PMG had a discussion regarding reducing staff in Arizona was on June 15, 2022, [id. at 21-22,] after her May 2022 visit to Arizona. Mansanas testified she compiled a list of employees with their salaries and sent it to Miscovich. [Id. at 20-22, 26.] Mansanas testified that Miscovich made the final decision to terminate the individuals who were terminated in June 2022, and that he typically works with the recommendations of the state director. [Id. at 24.]

**B.    Romero-Cardenas Deposition and Texts**

At the time of Plaintiff's termination, Romero-Cardenas was SJM and PMG's State Director of Arizona. See Mansanas Decl. at ¶¶ 4-5; Motion for Sanctions, Exh. C (Romero-Cardenas Depo.) at 9-11 (noting she moved into the director role in early 2022 and she stopped working full-time in October 2022).

Romero-Cardenas's deposition and texts show Romero-Cardenas did not approve a recommendation to terminate Plaintiff. In her deposition, Romero-Cardenas testified that she did not have a role in deciding which employees would be terminated in Arizona, and she was not privy to the decision until after it was made. [Motion for Sanctions, Exh. C (Romero-Cardenas Depo.) at 38-39.] Romero-Cardenas testified it was "a corporate decision," referring to the Hawai`i headquarters. [Id. at 39-40.] Romero-Cardenas testified she "was in shock" when Mansanas told her that four staff were being terminated. [Id. at 35-36.]

Text messages from Romero-Cardenas support this. A text messages sent by Romero-Cardenas to Plaintiff on June 21, 2022 indicates Romero-Cardenas was "still learning" about the decision to terminate Plaintiff and others. [Plaintiff Courtney Szubinski's Reply in Support of Motion for Reconsideration ("Reply to Motion Reconsideration"), filed 4/3/24 (dkt. no. 58), Declaration of Courtney Szubinski, Exh. 4 (text message thread titled PMG Site Lead Group Chat in which Tiffany Branson stated Plaintiff and others were "let go from PMG today"); id., Exh. 5 (text message from Romero-Cardenas, dated 6/21/22, stating "I'm still learning about this massive change PMG has done across-the-board.").]

Romero-Cardenas also testified that, at the time Mansanas visited Arizona in May 2022, there was no discussion about terminations occurring in Arizona. [Motion for Sanctions, Exh. C (Romero-Cardenas Depo.) at 29-30.] Instead, Romero-Cardenas testified that, in May 2022, she was working on a new business proposal to build new service lines in Arizona. [Id. at 21-23, 30-31.]

C.  **Miscovich**

Miscovich stated Romero-Cardenas "would have been in the main seat" in coming up with the list of people to terminate. [Motion for Sanctions, Exh. A (Miscovich Depo.) at 34.] Miscovich stated that Romero-Cardenas probably had discussions with someone in human resources such as Michael Decker, and probably Mansanas. [Id. at 34-35.] Miscovich maintains he had discussions with Romero-Cardenas in determining which employees to terminate. [Id. at 31-32.] Miscovich states he never saw "a list of employees to be terminated." Id. at 32; see also id. at 34. Miscovich stated he told Romero-Cardenas the size of the reduction that was needed, and said she was "responsible". [Id. at 32-33.] When asked to clarify if Romero-Cardenas was responsible for deciding who to terminate, Miscovich stated that Romero-Cardenas would have given "advice" but that he himself has "the final say-so when anything happens with any of [his] companies." [Id. at 33.] Miscovich testified:

"I own the company, so I have to always be responsible for the ultimate decision. I follow the advice of my leadership," [id. at 35,] and "-I'm the owner of the company and ultimately might make final decisions on it," [id. at 10].

## STANDARDS

### I.    Venue

Defendants challenge venue pursuant to Federal Rule of Civil Procedure 12(b)(3). [Motion to Dismiss at 3.] It is the plaintiff's burden to establish that venue is proper. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). In a Rule 12(b)(3) motion, the Court may consider facts beyond the pleadings and need not accept the factual allegations of the pleadings as true. Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY, 408 F.3d 1250, 1254 (9th Cir. 2005). If factual issues are contested, the district court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party, or it must hold a pretrial evidentiary hearing to decide on the disputed facts. Chey v. Orbitz Worldwide, Inc., 983 F. Supp. 2d 1219, 1227 (D. Hawai`i 2013) (citing Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138-39 (9th Cir. 2004)).

If venue is improper, the district court may dismiss the case without prejudice, or, if it is "in the interest of justice," transfer the case "to any district or division in

9

which it could have been brought." 28 U.S.C. § 1406(a); <u>see also</u>
<u>In re Hall, Bayoutree Assocs.</u>, 939 F.2d 802, 804 (9th Cir. 1991)
(stating dismissal for improper venue must be without
prejudice).

## II.  <u>Sanctions</u>

Federal Rule of Civil Procedure 11 authorizes a
district court to impose sanctions on a party that files a
motion without a legal or factual basis, or for an improper
purpose. <u>See</u> Fed. R. Civ. P. 11(b), (c); <u>Havensight Cap. LLC v.</u>
<u>Nike, Inc.</u>, 891 F.3d 1167, 1174 (9th Cir. 2018). Rule 11
requires that an attorney make representations "to the best of
the person's knowledge, information, and belief, formed after an
inquiry reasonable under the circumstances." Fed. R. Civ. P.
11(b). "Rule 11 is intended to deter baseless filings in
district court and imposes a duty of 'reasonable inquiry' so
that anything filed with the court is 'well grounded in fact,
legally tenable, and not interposed for any improper purpose.'"
<u>Islamic Shura Council of S. Cal. v. F.B.I.</u>, 757 F.3d 870, 872
(9th Cir. 2014) (per curiam) (quoting <u>Cooter & Gell v. Hartmarx</u>
<u>Corp.</u>, 496 U.S. 384, 393, 110 S. Ct. 2447 (1990)).[3]

---

[3] <u>Cooter</u> was partially superseded on other grounds as stated
in <u>de la Fuente v. DCI Telecommunications, Inc.</u>, 259 F. Supp. 2d
250, 257 (S.D.N.Y. 2003).

10

Rule 11 "imposes on any party who signs a pleading,
motion, or other paper . . . an affirmative duty to conduct a
reasonable inquiry into the facts and the law before filing, and
that the applicable standard is one of reasonableness under the
circumstances." Bus. Guides, Inc. v. Chromatic Commc'ns Enters.,
Inc., 498 U.S. 533, 551 (1991). An attorney's conduct "is
measured objectively against a reasonableness standard, which
consists of a competent attorney admitted to practice before the
involved court." In re Grantham Bros., 922 F.2d 1438, 1441 (9th
Cir. 1991) (citation omitted).

> [W]hat constitutes a reasonable inquiry "may
> depend on such factors as how much time for
> investigation was available to the signer;
> whether he had to rely on a client for
> information as to the facts underlying the
> pleading[]; whether the pleading [] was based on
> a plausible view of the law; or whether he
> depended on forwarding counsel or another member
> of the bar."

Lima v. Deutsche Bank Nat'l Tr. Co., CIVIL NO. 12-00509 SOM-RLP,
CIVIL NO. 12-00514 SOM-RLP, 2013 WL 12142572, at *4 (D. Hawai`i
July 29, 2013) (some brackets in Lima) (citing Fed. R. Civ.
P. 11 advisory committee's note to 1983 amendment).

"'Rule 11 is an extraordinary remedy' to be reserved
for 'rare and exceptional' cases." McAllister v. Adecco Grp.
N.A., CIV. NO. 16-00447 JMS-KJM, 2017 WL 11151055, at *2 (D.
Hawai`i Feb. 16, 2017) (quoting Operating Eng'rs Pension Tr. V.
A-C Co., 859 F.2d 1336, 1344-45 (9th Cir. 1988)).

A court may also impose sanctions pursuant to its inherent power. In this regard, a court in this district has stated:

> "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (citation omitted). When a court imposes sanctions pursuant to its inherent power, it must find "bad faith or conduct tantamount to bad faith." Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001). . . .

HH Assocs., U.S., Inc. v. Evans, 711 F. Supp. 3d 1196, 1205-06 (D. Hawai`i 2024).

## DISCUSSION

### I.  Motion to Dismiss

As noted, in the Motion to Dismiss, Defendants argue venue in the District of Hawai`i is improper under Title VII's venue provision, and that this Court should transfer the case to the District of Arizona on improper venue grounds or at its discretion. [Motion to Dismiss, Mem. in Supp. at 7-13.]

This Court has previously stated:

> Venue in Title VII cases is exclusively governed by Title 42 United States Code Section 2000e-5(f)(3). Johnson v. Payless Drug Stores Nw., Inc., 950 F.2d 586, 587-88 (9th Cir. 1991) (per curiam). "In employment discrimination cases, the Title VII venue provisions control rather than the general federal venue statute, even if a non-Title VII claim is included." Mayberry v. Int'l Bus. Machs. Corp., No. CV 09-

12

1369 CW, 2009 WL 1814436, at *3 (N.D. Cal.
June 25, 2009) (citing Johnson v. Pay Less
Drugstores Northwest, Inc., 950 F.2d 586, 587-88
(9th Cir. 1991)).

Section 2000e-5(f)(3) provides that:

an action may be brought in any judicial
district in the State in which the unlawful
employment practice is alleged to have been
committed, in the judicial district in which
the employment records relevant to such
practice are maintained and administered, or
in the judicial district in which the
aggrieved person would have worked but for
the alleged unlawful employment practice,
but if the respondent is not found within
any such district, such an action may be
brought within the judicial district in
which the respondent has his principal
office.

Generally, Title VII's venue provision allows
suit in the judicial district where the plaintiff
worked or would have worked. Passantino v.
Johnson & Johnson Consumer Prods., Inc., 212 F.3d
493, 504-505 (9th Cir. 2000). Venue may be
appropriate in more than one district. See id. At
[sic] 506. Under Section 2000e-5(f)(3), "venue is
proper in both the forum where the employment
decision is made and the forum in which that
decision is implemented or its effects are felt."
Id.

2/20 Order, 2024 WL 691375 at *2-3.

Defendants argue that Plaintiff has not carried her

burden of demonstrating that venue is proper in the District of

Hawai`i pursuant to Section 2000e-5(f)(3) because the decision

to terminate Plaintiff did not occur in Hawai`i. Specifically,

Defendants contend Plaintiff's venue-related discovery does not

support venue in this district because it does not demonstrate

13

that Miscovich made the decision to terminate Plaintiff, but
rather that the decision was made in Arizona. [Motion to
Dismiss, Mem. in Supp. at 13-14.] Defendants also assert that,
even if transfer of venue is not mandatory, the Court should
discretionarily transfer the case to the District of Arizona
pursuant to Title 28 United States Code Section 1404(a). [Id. at
14-19.]

Plaintiff contends the depositions of Miscovich,
Mansanas, and Romero-Cardenas demonstrate that venue is proper
in Hawai`i because Miscovich was the final decisionmaker that
terminated Plaintiff, Mansanas did not recommend Arizona
employees to be terminated, and Romero-Cardenas did not approve
recommendations of Arizona employees to be terminated. [Opp. to
Motion to Dismiss at 13-19.] Further, Plaintiff argues the Court
should not transfer venue pursuant to Title 28 United States
Code Section 1404. [Id. at 19-22.]

A.    **Whether Venue is Proper in Hawai`i**

Plaintiff has carried her burden under the first prong
of Title VII's venue provision by establishing that the
allegedly unlawful employment practice was committed in Hawai`i.
See 42 U.S.C. § 2000e-5(f)(3).

Miscovich's deposition demonstrates that the decision
to terminate Plaintiff was implemented in Hawai`i. Miscovich
testified: "I own the company, so I have to always be

14

responsible for the ultimate decision," [Motion for Sanctions, Exh. A (Miscovich Depo.) at 35,] and "I'm the owner of the company and ultimately might make final decisions on it," [id. at 10]. As noted, Miscovich is a Hawai`i resident, [Second Amended Complaint at ¶ 4,] and Plaintiff's termination letter was signed by Miscovich from a Hawai`i address, [id. at ¶ 36].

Mansanas's deposition confirms that the final decision to terminate Plaintiff did not occur in Arizona and supports the inference that the decision occurred in Hawai`i. Mansanas testified that Miscovich made the final decision to terminate the people who were terminated in June 2022, which included Plaintiff. See Motion for Sanctions, Exh. B (Mansanas Depo.) at 24. Mansanas confirmed that she was "not involved in selecting" the individuals who were terminated in June 2022. [Id. at 26.] Romero-Cardenas testified that she did not have a role in deciding which employees would be terminated in Arizona, and she was not privy to the decision until after it was made. [Motion for Sanctions, Exh. C (Romero-Cardenas Depo.) at 38-39.] Romero-Cardenas testified it was "a corporate decision," referring to the Hawai`i headquarters. [Id. at 39-40.] Romero-Cardenas testified she "was in shock" when Mansanas told her that four staff were being terminated. [Id. at 35-36.]

Defendants argue that, where a corporate policy to reduce the company's workforce was made by a company's

15

leadership, venue is not proper in the location of the company's headquarters. [Motion to Dismiss, Mem. in Supp. at 9-11 (some citations omitted) (citing to Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 277 n.2 (D.D.C. 2002); Slaby v. Holder, 901 F. Supp. 2d 129, 133 (D.D.C. 2012); Amirmokri v. Abraham, 217 F. Supp. 2d 88, 89-90 (D.D.C. 2002); Ring v. Roto-Rooter Servs. Co., 2010 WL 3825390, at *5 (S.D. Ohio Sept. 28, 2010)).] However, Defendants' argument is unavailing because that is not what occurred in the instant case. Here, there was no general corporate policy with a decision made in another state to implement that policy. Rather, it is clear that the decision to terminate Plaintiff was made in Hawai`i.

Finally, the Court notes that Plaintiff's termination is not the only allegedly unlawful employment practice at issue in the Second Amended Complaint. Plaintiff also alleges she was discriminated against when she was replaced in her capacity as clinical coordinator. See Second Amended Complaint at ¶ 63 ("Defendants violated Title VII by discriminating against Szubinski, based on her sex, when they replaced her as clinical coordinator with a less-qualified male employee and when they terminated her."). However, because Plaintiff's termination is the most significant adverse employment action taken against her, and the termination decision occurred in this district, venue is proper in this district. See Middlebrooks v. England,

16

No. Civ.A. 05CV0556JDB, 2005 WL 3213956, at *3 (D.D.C. Nov. 2, 2005) (considering where "the balance of allegedly discriminatory events, including plaintiff's actual termination and every instance of alleged workplace discrimination" occurred in determining where venue was proper pursuant to Title VII's venue statute).

Accordingly, because the decision to terminate Plaintiff was made in Hawai`i, venue is proper in this district. See Terry v. Garland, Case No. 21-cv-00007-DKW-KJM, 2021 WL 3573613, at *7 (D. Hawai`i Aug. 12, 2021) (finding Title VII venue proper where "some of the alleged unlawful conduct" occurred in this district); Berry v. Potter, No. CIV 04-2922 PHX RCB, 2006 WL 335841, at *3 (D. Ariz. Feb. 10, 2006) (holding venue was proper in the district where the plaintiff was working and the district in which officials decided not to promote the plaintiff).

**B.    Discretionary Transfer**

Defendants also argue the case should be transferred to the District of Arizona pursuant to Title 28 United States Code Section 1401(a) because venue is proper in that district and transfer is in the interest of justice. Defendants argue transfer is in the interest of justice because Plaintiff worked in Arizona, lived in Arizona, the majority of potential witnesses reside in Arizona and not Hawai`i, and relevant

17

employment records are not in Hawai`i. [Motion to Dismiss, Mem. in Supp. at 14-19.] In contrast, Plaintiff contends her choice of forum should be given significant weight, key decisionmakers such as Miscovich reside in Hawai`i, the location of documents is irrelevant in light of modern electronic discovery, Plaintiff has demonstrated a willingness to shoulder the costs associated with litigating in Hawai`i, Hawai`i has a vested interest in resolving disputes involving entities and individuals headquartered in the state, and transfer would unduly burden Plaintiff and undermine judicial efficiency. [Opp. to Motion to Dismiss at 19-22.]

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (ellipsis in Van Dusen) (citation and internal quotation marks omitted).

> In applying § 1404(a), the Court must engage in a two-part inquiry. First, the Court determines whether the action could have been brought in the transferee court. Second, the Court considers whether the transfer will enhance the convenience of the parties and witnesses, and is in the interests of justice.

18

<u>Terry</u>, 2021 WL 3573613, at *7 (citation and quotation marks
omitted).

        First, Defendants are correct that venue is also
proper in the United States District Court for the District of
Arizona, the district in which Plaintiff worked prior to her
termination. <u>See</u> 42 U.S.C. § 2000e-5(f)(3) ("an action may be
brought . . . in the judicial district in which the aggrieved
person would have worked but for the alleged unlawful employment
practice . . ."); Second Amended Complaint at ¶ 1 (alleging
Plaintiff is domiciled in Arizona); <u>id.</u> at ¶¶ 13, 17, 22 (noting
Plaintiff worked in Arizona for the duration of her employment
with Defendants); <u>id.</u> at ¶ 28 (noting adverse employment actions
that took place in Arizona). Plaintiff does not dispute that
venue is also proper in Arizona.

        Therefore, the Court must analyze the second prong:
the convenience to parties, the convenience to witnesses, and
the interests of justice. The Court may consider the presence of
a forum selection clause, the relevant public policy of the
forum state, and

                (1) the location where the relevant agreements
                were negotiated and executed, (2) the state that
                is most familiar with the governing law, (3) the
                plaintiff's choice of forum, (4) the respective
                parties' contacts with the forum, (5) the
                contacts relating to the plaintiff's cause of
                action in the chosen forum, (6) the differences
                in the costs of litigation in the two forums,

19

> (7) the availability of compulsory process to
> compel attendance of unwilling non-party
> witnesses, and (8) the ease of access to sources
> of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir.
2000).

The factors most relevant to the instant Motion to
Dismiss are: Plaintiff's choice of forum; the respective
parties' contacts with the forum and the contacts relating to
the plaintiff's causes of action; the differences in the costs
of litigation in the two forums; the availability of compulsory
process to compel attendance of unwilling non-party witnesses;
and the ease of access to sources of proof. After weighing the
relevant factors, the Court finds that Defendants have not made
"a strong showing of inconvenience to warrant upsetting the
plaintiff's choice of forum." See Decker Coal Co. v.
Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)
(citation omitted).[4]

While the parties' contacts with Arizona are
significant, the Court finds that the parties are in too early
of a stage of the litigation to evaluate the convenience of the
witnesses factor. The parties have conducted little discovery
aside from limited venue-related discovery and have not engaged

---

[4] Decker was superseded by statute on other grounds as
stated in MG Freesites Ltd. v. DISH Technologies L.L.C., 712 F.
Supp. 3d 1318, 1336 n.14 (N.D. Cal. 2024).

in motions practice aside from venue-related motions.
Accordingly, the Court cannot properly evaluate the convenience
of the witnesses factor, which "is often recognized as the most
important factor to be considered in ruling on a motion under
§ 1404(a)," Metz v. U.S. Life Ins. Co. in City of New York, 674
F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (citation and quotation
marks omitted). While Defendants argue that the majority of
witnesses would need to fly from Arizona to Hawai`i and non-
party witnesses could not be compelled to attend trial in
Hawai`i because they live in Arizona, see Motion to Dismiss,
Mem. in Supp. at 17-18, the parties have not yet disclosed their
witnesses; see Rule 16 Scheduling Order, filed 10/23/23 (dkt.
no. 47), at ¶ 15; Minutes, dated 10/25/24 (vacating the trial
date and all deadlines). Because the case is still early in
motions practice, Plaintiff's claims have not been further
distilled in order for Defendants to demonstrate which witnesses
would be likely to be called at trial. See Nevada v. Bank of Am.
Corp., No. 3:11-cv-00135-RCJ-WGC, 2011 WL 5190935, at *1 (D.
Nev. Oct. 27, 2011) ("As for the inconvenience of the parties
and witnesses at trial, there are not yet any witness lists for
the Court to consider, and the motion is therefore premature in
that regard."). Likewise, the Court cannot accurately evaluate
the cost of litigation at this stage.

Based on the factors the Court can evaluate at this
stage, Defendants have not made such a strong showing of
inconvenience that would warrant upsetting Plaintiff's choice of
forum. Accordingly, the Court denies the Motion to Dismiss
without prejudice to filing another motion to transfer venue at
the time of the dispositive motions deadline, when the Court
anticipates the parties will have engaged in sufficient
discovery in order for the Court to be able to anticipate who
the witnesses are, and evaluate the costs of litigation.

II.  **Motion for Sanctions**

Plaintiff asks the Court to sanction Defendants
pursuant to Rule 11(b)(3) and the Court's inherent power for
Defendants' assertion of false facts and misleading arguments in
their filings related to the First Motion to Dismiss and the
Motion for Reconsideration. Specifically, in these filings
Defendants contended that Mansanas made evaluations of Arizona
staff which formed part of the basis for the decision to
terminate Plaintiff, Romero-Cardenas approved the recommendation
to terminate Arizona staff, and Miscovich merely confirmed but
did not make the final decision to terminate Arizona staff,
including Plaintiff. Plaintiff argues the depositions of
Mansanas, Romero-Cardenas and Miscovich reveal these factual
averments were false. [Motion for Sanctions, Mem. in Supp. at 9-
24.] As to sanctions under the Court's inherent power, Plaintiff

argues that Defendants' counsel's willful making of misleading arguments and factual inaccuracies, despite having known this information for twenty months, violated their duty of candor to the Court and warrants sanctions. Plaintiff seeks attorneys' fees and costs related to litigating the Motion to Dismiss, the Motion for Reconsideration, and venue-related discovery, as well as an order requiring Defendants to report inaccuracies in prior pleadings and motions. [Id. at 24-26.]

Defendants argue Rule 11 does not apply to the factual averments in their filings related to the First Motion to Dismiss, which were made in discovery responses, and each factual averment was based on Defendants' knowledge at the time, or has been subsequently corrected. Regarding sanctions under the Court's inherent authority, Defendants argue they did not act in bad faith or recklessly, but rather their venue-related filings were made based upon reasonable inquiry. [Opp. to Motion for Sanctions at 3.] Defendants note that Miscovich maintains that he never saw a list of employees to be terminated. Defendants argue their reliance on facts they reasonably believed to be truthful is not sanctionable. [Id. at 15.⁵]

---

⁵ Defendants also make arguments against sanctions imposed pursuant to Title 28 United States Code Section 1927, but Plaintiff does not make any arguments in this regard in the Motion for Sanctions. See Opp. to Motion for Sanctions at 3, 5. Accordingly, the Court declines to address these arguments.

The Court will briefly outline the venue-related representations that Defendants made thus far, before considering whether sanctions are warranted.

A.    **Defendants' Venue-Related Representations**

Defendants' reply in support of the First Motion to Dismiss ("Reply to First Motion to Dismiss") relied on the Corrected Declaration of Rene Mansanas, in which Mansanas stated that Plaintiff's termination was based on nationwide downsizing, she toured the Arizona facility in May 2022 "as part of [her] management duties to evaluate the operations and staffing at these facilities," and her "recommendations were based on [her] visits and observations at each location[.]" Submission of Corrected Declaration of Rene Mansanas, filed 1/26/24 (dkt. no. 51), at PageID.461-63 ("Corrected Mansanas Decl.") at ¶¶ 3, 5-6; see also Reply to First Motion to Dismiss, filed 12/29/23 (dkt. no. 49), at 2.[6]

In their memorandum in opposition to the Motion for Reconsideration ("Opposition to Motion for Reconsideration"), Defendants stated for the first time that Romero-Cardenas approved Mansanas's recommendation to terminate Plaintiff. See

_____

[6] The Reply to First Motion to Dismiss included the Declaration of Rene Mansanas, which was subsequently corrected. See Corrected Mansanas Decl. (correcting paragraph five of the Declaration of Rene Mansanas submitted with the Reply to First Motion to Dismiss).

Opp. to Motion for Reconsideration, filed 3/22/24 (dkt. no. 57),
at 2-3, 7; see generally First Motion to Dismiss; Reply to First
Motion to Dismiss. At the time of the Motion for
Reconsideration, Defendants' assertions regarding the decision
to terminate Plaintiff were as follows:

> The decision to terminate Plaintiff was made
> after there was a slowdown and decrease of
> business in Arizona. The decision was made after
> ascertaining the costs of doing business in
> Arizona. Diana Gould knew of Defendants' need to
> manage the size of their staff. Rene Mansanas
> (fka Rene Pagaoa) and Shanelle Starrett created a
> list of the Arizona location's salaries and a
> chart of the leadership team. See Defendants'
> Response to Plaintiffs Second Request for
> Production of Documents. The decision on
> employees to terminate was based on, inter alia,
> the list of salaries, leadership team chart, site
> functions, and Rene Mansanas' evaluations of
> operations in Arizona. Krista Romero-Cardenas,
> Defendants' former Arizona State Director,
> approved the recommendations to terminate the
> Arizona staff and that Plaintiff's termination
> would not impair Defendants' Arizona location's
> daily operations. After review of all the
> information, Scott J. Miscovich, MD confirmed the
> decision to terminate the staff identified at the
> Arizona location, which included Plaintiff.

[Motion for Reconsideration, Exh. 2 (Defendants' Response to
Plaintiff's Second Set of Interrogatories to Defendants, Dated
January 24, 2024 ("Interrogatory Response")) at Interrogatory
No. 1.]

In their Opposition to Motion for Reconsideration,
Defendants based their argument on the above narrative,
specifically that Romero-Cardenas approved the decision to

terminate Plaintiff, in arguing that the decision to terminate Plaintiff was made in Arizona. See Opp. to Motion for Reconsideration at 2-3, 7-9. Defendants' Opposition to Motion for Reconsideration relied on a Declaration of Rene Mansanas, in which she attested that Romero-Cardenas approved Plaintiff's termination while in Arizona. [Id., Declaration of Rene Mansanas ("Mansanas Opp. to Reconsideration Decl.") at ¶ 4.]

Defendants later amended their Interrogatory Response to state that Romero-Cardenas "acknowledged" rather than "approved" the "recommendations to terminate the Arizona staff." [Motion for Sanctions, Exh. F (Defendants' Amended Response to Plaintiff's Second Set of Interrogatories to Defendants, Dated January 24, 2024 ("Amended Interrogatory Response")) at Interrogatory No. 1.]

**B.    Rule 11 Sanctions**

Plaintiff takes issue with Defendants' representations and arguments made in their Opposition to Motion for Reconsideration and in their Reply to First Motion to Dismiss. However, these documents, when considered as a whole or when considering only the factual averments at issue, are not "baseless," and do not warrant Rule 11 sanctions. Similarly, the Court is not persuaded that Defendants' counsel acted in bad faith in relation to the filings regarding the First Motion to

26

Dismiss and the Motion for Reconsideration. Therefore, the Court declines to impose sanctions pursuant to its inherent power.

However, Plaintiff is correct that Defendants' narrative concerning Plaintiff's termination has changed between the First Motion to Dismiss and the Motion for Reconsideration to the instant Motion to Dismiss. See Motion for Sanctions, Mem. in Supp. at 10-11; compare Reply to First Motion to Dismiss at 2-3, with Opp. to Motion for Reconsideration at 2-3.

Further, based on the evidence before the Court, the Corrected Mansanas Declaration, filed by Defendants in support of their Reply to First Motion to Dismiss, is misleading. In the Corrected Mansanas Declaration, Mansanas stated she toured the Arizona facility in May 2022 "as part of [her] management duties to evaluate the operations and staffing at these facilities," and her "recommendations were based on my visits and observations at each location[.]" [Corrected Mansanas Declaration at ¶¶ 5-6.] However, in light of her deposition testimony, it does not appear that Mansanas made recommendations to terminate Arizona employees, though she did send a list of employees and their salaries to Miscovich, among others. See Motion for Sanctions, Exh. B (Mansanas Depo.) at 20-22, 24, 26.

Likewise, Plaintiff correctly points out that Romero-Cardenas did not receive a recommendation to terminate Plaintiff, and did not approve a recommendation to terminate

27

Plaintiff. See id., Mem. in Supp. at 16-21; id., Exh. C (Romero-Cardenas Depo.) at 36, 38-39; Reply to Motion for Reconsideration, Declaration of Courtney Szubinski, Exh. 4, Exh. 5.

However, sanctioning Defendants' counsel under Rule 11 is not warranted, because, as Defendants point out, Defendants' counsel relied on interviews with Miscovich, Mansanas, and other employees in making these factual averments. Defendants' counsel maintains:

> Defendants' filings in relation to the proper venue of this action contain factual averments developed through discussions with Dr. Scott Miscovich, Rene Mansanas, and other employees of Defendants which resulted in sworn client declarations. We also extensively reviewed documents provided by our clients, some of which were filed as exhibits to our filings.

[Opp. to Motion for Sanctions, Declaration of Counsel at ¶ 3 (citations omitted).]

During his deposition, Miscovich remembered (apparently incorrectly) that Romero-Cardenas approved the termination. See Motion for Sanctions, Exh. A (Miscovich Depo.) at 31-34. Likewise, in the Mansanas Reconsideration Opposition Declaration, Mansanas stated that Romero-Cardenas approved Plaintiff's termination while in Arizona. [Mansanas Reconsideration Opp. Decl. at ¶ 4.] Further, Mansanas did send a

list of employees and their salaries to Miscovich. [Motion for
Sanctions, Exh. B (Mansanas Depo.) at 20-22.]

       Defendants' counsel appears to have relied on
Miscovich's and Mansanas's representations, which were
incorrect. Accordingly, Defendants' filing of the Reply to First
Motion to Dismiss and the Opposition to Motion for
Reconsideration were not baseless. The Court cannot conclude
that the factual contentions had no "evidentiary support." See
Fed. R. Civ. P 11(b)(3); see also MetLife Bank, N.A. v.
Badostain, No. 1:10-CV-118-CWD, 2010 WL 5559693, at *6 (D. Idaho
Dec. 30, 2010) (noting that "[a]n attorney satisfies his or her
burden under Rule 11 by confirming that 'some evidence'
supports" a factual allegation or claim). Defendants have also
withdrawn the incorrect representation that Romero-Cardenas
"approved" the termination decision. See Motion for Sanctions,
Exh. F (Amended Interrogatory Response) at Interrogatory No. 1.]

       Accordingly, under an objective reasonableness
standard, considered at the time of Defendants' filings, the
Court cannot conclude that Defendants' counsel did not conduct a
reasonable investigation. Therefore, the Court denies the Motion
for Sanctions as to Plaintiff's request sanctions pursuant to
Federal Rule of Civil Procedure 11.

C.    **Sanctions Pursuant to the Court's Inherent Power**

The Court also declines to impose sanctions pursuant
to its inherent power. As analyzed above, Defendants' factual
averments were not so groundless that they appear to be an
intentional obfuscation or made in bad faith. Rather,
Defendants' counsel appears to have failed to undertake a
fulsome factual investigation. The Court does not find that the
Defendants' counsel's conduct was done in bad faith or
tantamount to bad faith, as is required for the Court to
exercise its inherent power to impose sanctions. See Fink v.
Gomez, 239 F.3d 989, 993 (9th Cir. 2001).

While sanctions are not warranted, the Court
admonishes Defendants' counsel for failing to conduct a more
thorough investigation of his clients' representations
concerning the decision to terminate Plaintiff. While
Defendants' counsel notes he had discussion with Miscovich and
Mansanas, [Opp. to Motion for Sanctions, Declaration of Counsel
at ¶ 3,] in light of the changing narrative Defendants presented
regarding the termination decision, Defendants' counsel should
have determined how the decision was made by questioning
Miscovich further, or by interviewing Romero-Cardenas or other
of Defendants' employees. Defendants' counsel had access to
interview Defendants' employees, and short interviews with
knowledgeable employees would have revealed how the decision was

made to terminate Plaintiff – something that after two venue-related motions and a motion for reconsideration is still not entirely clear. Defendants' counsel's inept handling of the venue-related fact-finding unnecessarily prolonged this litigation by nearly one year.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Defendants' Renewed Motion to Dismiss or Transfer of Venue, filed September 26, 2024, is HEREBY DENIED WITHOUT PREJUDICE to filing another motion for transfer of venue at the time of the dispositive motion's deadline. Plaintiff's Motion for Sanctions, filed October 23, 2024, is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2025.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

<u>**COURTNEY SZUBINSKI VS. SJM PREMIER MEDICAL GROUP LLC, ET AL**</u>; CV 22-00533 LEK; ORDER DENYING DEFENDANT'S RENEWED MOTION TO DISMISS OR TRANSFER VENUE, AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS